## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **SEKRE KOUAKOU, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **No. 09 C 7132** |
| | ) | |
| **SUTTON FUNDING, LLC, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Michael J. Riley's (Riley),

Defendant Christopher Likens'(Likens), Defendant Piggybanker Stock Company's

(PSC), and Defendant Nations Holding Company's (NHC) (collectively "Moving

Defendants") motions to dismiss. For the reasons stated below, the court grants the

motions to dismiss.

## BACKGROUND

Plaintiffs allege that they had a financial interest in a property located at 14 S.

15th Avenue, in Maywood, Illinois (Property), and that in 2006, they secured an

adjustable rate mortgage loan on the Property (Original Loan) with an initial interest

1

rate of 7%. Plaintiffs also allege that in July of 2007, they received a telephone

solicitation from Defendant Challenge Financial Investors Corp. (Challenge),

offering to refinance the Original Loan so that Plaintiffs received better loan terms

and cash back at closing to use toward the repayment of other existing debt.

Plaintiffs allegedly met with a loan officer from Challenge (Loan Officer), provided

him with their financial information for the purpose of completing a loan application

(Application), but did not execute the Application at that time. After reviewing their

financial information, the Loan Officer allegedly indicated to Plaintiffs that

Challenge could offer them a new mortgage loan on the Property (Refinance Loan)

with a fixed interest rate of 7.8%, and the Loan Officer also represented to Plaintiffs

that they would receive $20,000.00 cash back at closing.

     According to Plaintiffs, although they met the Loan Officer at an office of

Challenge, the Application falsely indicates that the Application was taken over the

telephone. In addition, the Application allegedly omitted certain information.

Further, Plaintiffs allege that prior to the closing of the Refinance Loan, the Property

was appraised by an appraiser chosen by Challenge, who indicated that the Property

was worth $244,000.00. Plaintiffs also allege that when the Property was appraised

the prior year, it was appraised for $30,000.00 less than that amount.

     On July 31, 2007 (Settlement Date), Plaintiffs allegedly closed on the

Refinance Loan. The principal amount borrowed under the Refinance Loan was allegedly $219,000.00. In addition, the Refinance Loan allegedly had a 30-year maturity date, and provided that the interest rate would be 8.9% for a three-year period and that the interest rate would be a variable rate every six-months thereafter. Plaintiffs allege that the closing documents were never explained to them, and that at the closing, they were merely instructed regarding where to sign each document. In addition, Plaintiffs allege that after the closing, they received only $1,249.48 cash back.

According to Plaintiffs, they were never provided with written disclosures of the terms of the Refinance Loan prior to the Settlement Date. Instead, Plaintiffs allegedly relied on the earlier representations of the Loan Officer regarding the terms of the Refinance Loan. Plaintiffs allege that entering into the Refinance Loan has put them in a worse financial position than they were in when they entered into the Original Loan. The cost to enter into the Refinancing Loan was allegedly more than $1,200.00, and Plaintiffs' monthly mortgage payments were allegedly $400.00 more under the terms of the Refinance Loan. In addition, Plaintiffs were allegedly charged various questionable fees related to the closing of the Refinance Loan. In addition, prior to the Settlement Date, Plaintiffs were allegedly never provided copies of the notice indicating their right to rescission and cancellation of the Refinance Loan

(Notice), nor were Plaintiffs allegedly ever provided with an itemization of the amount financed or other disclosures required by law.

In June 2008, Challenge's Illinois Mortgage Broker License was allegedly revoked due to Challenge's alleged violation of various Illinois consumer protection laws. In late 2008, Plaintiffs allegedly sent a Qualified Written Request (Request) to the lender and the servicer of the Refinance Loan, but allegedly neither party ever fully responded to the Request. Plaintiffs include in their amended complaint claims alleging violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Regulation Z, 12 C.F.R. § 226.1 *et seq.* (Count I and Count II), claims alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 *et seq.* (Count III), state law breach of contract claims (Count IV) and breach of fiduciary duty claims (Count V), claims alleging violations of the Credit Repair Organization Act, 15 U.S.C. § 1679 *et seq.* (Count VI), state law civil conspiracy claims (Count VII), quiet title claims (Count VIII), claims alleging a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* (Count IX), misrepresentation claims (Count X), and common law fraud claims (Count XI). Moving Defendants now move to dismiss all claims brought against them, contending that this court lacks personal jurisdiction over them.

The court notes that after the instant motions to dismiss were fully briefed,

4

Plaintiffs filed a motion for leave to conduct jurisdictional discovery and requested

another opportunity to brief the issue of personal jurisdiction.  On October 12, 2011,

the court granted Plaintiffs' motion and gave Plaintiffs thirty-days to conduct

jurisdictional discovery.  The court also set another briefing schedule so that the

parties could address the issue of personal jurisdiction a second time.  After several

of the Defendants in the instant action were dismissed pursuant to settlement, the

court revised the briefing schedule, and gave Plaintiffs until January 23, 2012 to file

additional responses to Moving Defendants' motions to dismiss.  Plaintiffs failed to

file any additional responses.


## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) (Rule 12(b)(2)) says a party can

move to dismiss claims for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  A

plaintiff is not required to allege in his complaint facts to support the existence of

personal jurisdiction.  *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712,

715 (7th Cir. 1998).  However, once a defendant moves to dismiss for lack of

personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of

personal jurisdiction.  *Id*.; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th

Cir. 1997).  When the court adjudicates a motion to dismiss brought pursuant to Rule

12(b)(2) based on written materials submitted to the court, "the plaintiff need only make out a *prima facie* case of personal jurisdiction." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003)(citations omitted) (internal quotations omitted). In determining whether the plaintiff has met his burden, the "court accepts all well-pleaded allegations in the complaint as true." *Hyatt Int'l. Corp. v. Coco,* 302 F.3d 707, 712-13 (7th Cir. 2002). In addition, "the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found.*, 338 F.3d at 782; *see also RAR,* 107 F.3d at 1275 (stating that the plaintiff "is entitled to have any conflicts in the affidavits resolved in its favor").

## DISCUSSION

Moving Defendants argue that the claims against them must be dismissed because this court lacks personal jurisdiction over them. Personal jurisdiction involves consideration of both federal and state law. *Illinois v. Hemi Group, LLC*, 622 F.3d 754, 756-57 (7th Cir. 2010). Under both the Federal Constitution and the Illinois Constitution, a defendant is subject to personal jurisdiction "only if the defendant had certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Mobile*

6

*Anesthesiologists Chicago, LLC v. Anesthesia Associates of Houston Metroplex, P.A.*, 623 F.3d 440, 443-44 (7th Cir. 2010)(citations omitted)(internal quotations omitted). A court has general personal jurisdiction over a defendant if the defendant has "continuous and systematic" contacts with the forum that are "sufficiently extensive and pervasive to approximate physical presence." *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The court has specific personal jurisdiction over a defendant if "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Id.* at 702 (citation omitted).

I. Individual Moving Defendants

The parties do not dispute that this court has personal jurisdiction over Challenge, a Florida corporation that was allegedly a licensed mortgage broker in Illinois and the entity that contacted Plaintiffs regarding the Refinance Loan. In support of their motions to dismiss for lack of personal jurisdiction, Riley and Likens have each submitted a signed declaration indicating that they are not citizens of Illinois, that they do not have continuous and systematic contacts with Illinois, and that they have not directed the activities of Challenge with respect to matters

affecting Illinois residents.  (Riley Mem. Ex. A); (Likens Mem. Ex. A).  Plaintiffs

argue that, in spite of the representations made by Riley and Likens in their sworn

affidavits, the court may exercise personal jurisdiction over Riley and Likens

because they are vicariously liable for the acts of Challenge.  In support of their

argument, Plaintiffs rely on certain exceptions to the fiduciary shield doctrine.  In

addition, Plaintiffs contend that the court has personal jurisdiction over Riley and

Likens because in a similar action brought in the Northern District of Ohio, neither

Riley nor Likens challenged the court's exercise of personal jurisdiction over them,

and because the court in that action made certain findings with respect to Challenge,

PSC, and NHC.


   A.  The Fiduciary Shield Doctrine

   Plaintiffs argue that the court may exercise personal jurisdiction over Riley

and Likens based upon certain exceptions to the fiduciary shield doctrine.  The

fiduciary shield doctrine provides that a court cannot exercise personal jurisdiction

over a defendant "whose presence and activity in the state in which the suit is

brought were solely on behalf of his employer or other principal."  *Rice v. Nova

Biomedical Corp*., 38 F.3d 909, 912 (7th Cir. 1994); *see also McGreal v. Semke*,

2011 WL 5868235, at *3 (N.D. Ill. 2011)(stating that "[t]he 'fiduciary shield'

doctrine will protect a non-resident whose contact with Illinois is 'by virtue of his acts as a fiduciary of a corporation'")(citations omitted).  An exception to the fiduciary shield doctrine is made if a defendant "was acting also or instead on his own behalf-to 'serve his personal interests.'"  *Rice*, 38 F.3d at 912 (citation omitted). In addition, under the "alter-ego" exception to the fiduciary shield doctrine, the fiduciary shield doctrine does not apply if "the plaintiff makes a *prima facie* showing . . . that the corporate form is a shell or a sham rather than a real, separate entity."  *In re Teknek, LLC*, 354 B.R. 181, 196 (Bankr. N.D. Ill. 2006)(citations omitted); see also *Washburn v. Becker*, 542 N.E.2d 764, 766-67 (Ill. App. Ct. 1989)(recognizing that application of the fiduciary shield doctrine is discretionary in nature and that the doctrine should not be applied when "the corporation which an individual defendant represents is a 'sham,' in that it lacks sufficient assets to respond in damages to a suit or is the defendant's alter ego").

In the instant action, Plaintiffs have not made any allegations relating to acts personally taken by Riley or Likens in Illinois or elsewhere.  Since the fiduciary shield doctrine is applied when a defendant commits an act within the forum on behalf of a corporation, the fiduciary shield doctrine is not relevant to the court's determination of whether the court has personal jurisdiction over Riley or Likens. Further, even if the fiduciary shield doctrine was relevant, Plaintiffs have not alleged

facts or shown that the exceptions to the fiduciary shield doctrine discussed above are applicable to Riley or Likens.

In determining whether a defendant's actions were taken solely on behalf of his employer, the court looks at "the quality and nature of the defendant's acts," as well as "personal gain, discretionary actions, and ownership of most of a corporation's stock." *Femal v. Square D Co.*, 903 N.E. 2d 32, 38 (Ill. App. Ct. 2009)(citations omitted)(internal quotations omitted). In the amended complaint, Plaintiffs allege that at all relevant times, Riley was the Director and Vice President of Challenge. Plaintiffs also allege that at all relevant times, PSC was the sole shareholder of Challenge, and that Riley was the Treasurer of PSC. In addition, Plaintiffs allege that NHC was the parent company of PSC, that NHC is now the sole shareholder of PSC, and that at all relevant times, Riley was NHC's Chief Financial Officer. Plaintiffs have further alleged that at all relevant times, Likens was the President and Controlling Shareholder of PSC.

As noted above, Plaintiffs have not made any allegations relating to any acts personally taken by Riley or Likens. Nor have Plaintiffs made any allegations relating to personal gain realized by Riley or Likens based on the acts allegedly taken by Challenge with respect to Plaintiffs or others. Further, Plaintiffs have not alleged that Riley has any ownership interest in Challenge, PSC, or NHC, and Plaintiffs have

merely alleged that Likens had controlling ownership of PSC.  The facts alleged and

relied on by Plaintiffs are not sufficient to indicate that the acts allegedly taken by

Challenge were controlled by Riley or Likens, or were primarily meant to serve their

own personal interests, as opposed to the interests of Challenge.

     In addition, the relevant inquiry under the "alter ego" exception to the

fiduciary shield doctrine is whether "the corporation is real or a shell."  *Torco Oil*

*Co. v. Innovative Thermal Corp*., 730 F.Supp. 126, 136 (N.D. Ill. 1989).  In

determining whether a corporate form is a shell or a sham, the court looks at whether

the corporation's assets were treated as the defendant's own, whether the corporation

was undercapitalized, or whether "the individual officers or shareholders depleted the

business entity of assets" or "created unexplained adjustments in financial

statements." *Teknek, LLC,* 354 B.R. at 196 (citations omitted); *see also Torco*, 730

F.Supp. at 136-37 (indicating that some courts apply factors such as "(1) the failure

to maintain adequate corporate records or to comply with corporate formalities, (2)

the commingling of funds or assets, (3) under-capitalization, and (4) one corporation

treating the assets of another corporation as its own," while other courts require the

plaintiff to "make out a *prima facie* case that the corporation is a sham 'in that it

lacks assets *or* is defendant's alter ego'").  To successfully demonstrate that the

"alter ego" exception to the fiduciary shield doctrine should be applied, a plaintiff

11

need only make "a 'minimally viable' showing that the corporation is a 'sham.'"
*YKK USA, Inc. v. Baron*, 976 F.Supp. 743, 747 (N.D. Ill. 1997)(citation omitted)(also
stating that "[t]he 'alter ego' exception [to the fiduciary shield doctrine] is similar to,
but is less exacting than, the test for piercing the corporate veil")(citation omitted);
*see also Torco*, 730 F.Supp. at 136-37 (noting that the test is "less demanding" than
the test used in determining whether to pierce the corporate veil, because "it
eliminates the requirement that the sham corporation be used to perpetrate a fraud,"
and stating that the "application of the alter ego exception is refused only where no
facts are alleged supporting a finding that the corporation is a sham . . . or where the
supporting evidence is so manifestly insufficient that the alter ego argument is not
even minimally viable").

        In the instant action, Plaintiffs have not alleged any facts nor put forth any
evidence indicating that Challenge is a sham corporation that was put in place merely
to disguise the activities of Riley or Likens.  Plaintiffs have not alleged any facts
related to the assets or corporate records of Challenge, much less facts addressing
Riley's or Likens' use of or control over the assets.  Mere allegations that Riley and
Likens are officers or shareholders over various related corporations do not suffice to
demonstrate that Challenge is a sham corporation.  *See, e.g., Kula v. J.K. Schofield &
Co., Inc.*, 668 F.Supp. 1126, 1129 (N.D. Ill. 1987)(rejecting the argument that an

individual was the alter ego of a corporation "by virtue of his being the chairman of the board, chief executive officer and sole shareholder of a corporation").  Thus, Plaintiffs have not made even a minimally viable showing that the alter ego exception to the fiduciary shield doctrine is applicable to Riley or Likens.  Based upon the above, even if the fiduciary shield doctrine was relevant to the court's analysis regarding the exercise of personal jurisdiction over Riley and Likens, Plaintiffs have not shown that the exceptions to the fiduciary shield doctrine are applicable.  Therefore, the court would not exercise personal jurisdiction over Riley or Likens on the basis of such exceptions.

B.  Piercing the Corporate Veil

To the extent that Plaintiffs have also sought to argue that the court should pierce the corporate veil of Challenge to assert personal jurisdiction over Riley and Likens, Plaintiffs have not sufficiently alleged or shown that piercing the corporate veil would be appropriate in this case.  In determining whether to pierce the corporate veil to assert personal jurisdiction over a defendant, the court applies Illinois law.  *See Old Orchard Urban Ltd. Partnership v. Harry Rosen, Inc*., 904 N.E.2d 1050, 1061 (Ill. App. Ct. 2009)(finding "that although the law of the state of incorporation applies when a party seeks to substantively pierce a corporation's veil,

Illinois law governs the analysis where a party uses veil piercing to establish personal jurisdiction"). To pierce the corporate veil under Illinois law, there must be allegations or evidence that "there is unity of interest and ownership such that the separate identities of the entities are nonexistent." *Id.*; *see also, e.g., Int'l. Financial Services Corp. v. Chromas Technologies Canada, Inc*., 356 F.3d 731, 736 (7th Cir. 2004). Signs that there is a unity of interest and ownership include "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) nonfunctioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a stockholder or other person or entity to the detriment of creditors; (10) failure to maintain arm's-length relationships among related entities; and (11) whether, in fact, the corporation is a mere facade for the operation of the dominant stockholders." *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec,* 529 F.3d 371, 379 (7th Cir. 2008)(quoting *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct. 2005)). In addition, to pierce the corporate veil, Illinois law requires "a showing of fraud or injustice. . . ." *Old Orchard*, 904 N.E.2d at 1062; *see also, e.g., Int'l. Financial*, 356 F.3d at 736. As discussed above, Plaintiffs have not alleged any facts or put forth any evidence suggesting that Challenge is a sham corporation.

14

Further, Plaintiffs have not alleged or put forth any evidence showing fraud, injustice, or inequity. Based on the above, it would be inappropriate to pierce the corporate veil of Challenge to assert personal jurisdiction over Riley and Likens.

### C. Effect of Ohio Litigation

Plaintiffs also argue that the court should deny Riley's and Likens' motions to dismiss because in a similar action brought in the Northern District of Ohio, neither Riley nor Likens challenged the Ohio court's exercise of personal jurisdiction over them, and because the court in that action found that "1) Challenge is the wholly-owned subsidiary of PSC; 2) NHC is a corporation who at the very least contracted with PSC to consolidate financial information between Challenge and PSC; [ ] 3) Likens was the President of PSC and the majority owner of NHC[;]" and 4) that "it was difficult to ascertain the true purpose of NHC." (Resp. to Riley, Ex. 4). In the first instance, the court notes that Riley and Likens both raised the issue of personal jurisdiction as part of their affirmative defenses in the Ohio action. (Resp. to Riley, Ex. 1, 16); (Resp. to Likens, Ex. 1, 16). Further, Plaintiffs have cited no case law indicating that the failure to object to the exercise of personal jurisdiction in one forum precludes a defendant from objecting to personal jurisdiction in another forum. In addition, the findings of the Ohio court do not provide substantially new or

relevant information regarding whether Challenge can be considered the alter ego of

Riley or Likens, especially given that they were made in the context of providing a

report and recommendation regarding whether the court had subject matter

jurisdiction based on the Class Action Fairness Act.  Thus, the Ohio action has no

bearing on whether this court may exercise personal jurisdiction over Riley or

Likens.  Based on the above, Plaintiffs have not sufficiently alleged or put forth

sufficient evidence to make a *prima facie* case of personal jurisdiction over Riley or

Likens, and the claims brought against Riley and Likens are therefore dismissed for

lack of personal jurisdiction.  The court notes that Riley and Likens also moved for

dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  However, since this

court does not have personal jurisdiction over Riley or Likens, the court will not

address those arguments.


 II.  Corporate Moving Defendants

        In support of their motion to dismiss for lack of personal jurisdiction, PSC

and NHC have submitted the affidavit of Christopher Faoro (Faoro), the Assistant

Treasurer of both companies.  Faoro indicates that PSC is a Florida corporation with

its principal place of business in Kansas.  (Corp. Mem. Ex. A, Par 3).  Faoro also

indicates that although PSC is the parent corporation of Challenge, PSC itself does

not have contacts with the state of Illinois that are sufficient to establish personal jurisdiction in Illinois. (Corp. Mem. Ex. A, Par 4-5). In addition, Faoro indicates that NHC is a Kansas corporation with its principal place of business in Kansas. (Corp. Mem. Ex. A, Par 6). Faoro also indicates that NHC is not the parent corporation of PSC and that NHC holds no ownership interest in PSC or Challenge. (Corp. Mem. Ex. A, Par 6). Further, Faoro indicates that NHC does not have contacts with the state of Illinois that are sufficient to establish personal jurisdiction in Illinois. (Corp. Mem. Ex. A, Par 7-8). Plaintiffs argue that Faoro's affidavit is insufficient because it does not establish that PSC and NHC were truly distinct and separate entities from Challenge during the time period relevant to the complaint.

As discussed above, it is Plaintiffs' burden to establish that the court has personal jurisdiction over Moving Defendants. Plaintiffs allege in their amended complaint that PSC was the sole shareholder of Challenge at all times relevant to the amended complaint. Plaintiffs also allege that NHC was the parent company of PSC, and that NHC is now the sole shareholder of PSC. In addition, Plaintiffs allege that Challenge, PSC, and NHC shared certain officers and shareholders at all relevant times. Finally, Plaintiffs rely on the Ohio court's findings, as laid out above. Although Plaintiffs assert that such facts demonstrate that there are no arms-length distances between Challenge and Moving Defendants, that there is a reasonable

17

probability of Moving Defendants having a past and current personal and financial interest in Challenge, and that there was no real separation of control and power between Challenge, PSC, and NHC, the case law is clear that such facts do not sufficiently establish that PSC or NHC are alter egos of Challenge. *See Old Orchard*, 904 N.E.2d at 1061-62 (stating that "courts will look to a number of factors, including whether there is inadequate capitalization, a failure to observe corporate formalities, insolvency on the part of the debtor corporation, and an absence of corporate records," and that "the use of common officers and directors, or the sharing of office space, without more, does not render one corporation liable for the obligations of another"). Based on the above, Plaintiffs have not sufficiently alleged or put forth sufficient evidence to make a *prima facie* case of personal jurisdiction over PSC or NHC, and the claims brought against PSC and NHC are therefore dismissed for lack of personal jurisdiction.

18

**CONCLUSION**

Based on the foregoing analysis, the court grants Moving Defendants' motions to dismiss.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated:   February 22, 2012